## FRANCIS C. BROWN *vs.* HAROLD D. COREY & others.

Middlesex.   January 26, 1906. — March 5, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & SHELDON, JJ.

*Equity Jurisdiction,* For an accounting, Discovery.   *Agency.   Broker.   Equity Pleading and Practice,* Bill.

In order to maintain a bill in equity for an accounting it must appear from its specific allegations either that there was a fiduciary relation between the parties or that the account is so complicated that it cannot be conveniently taken in an action at law.

The ordinary pecuniary relation between a stockbroker and his customer is not a fiduciary one but that of debtor and creditor.

In a bill in equity against a firm of stockbrokers for an accounting, an allegation that "the plaintiff relied upon the knowledge and experience of the defendants in regard to buying and selling stocks . . . and employed the defendants as his

brokers in order to avail himself of said peculiar knowledge and experience" does not state a fiduciary relation between the parties.

In a bill in equity against a firm of brokers for an accounting, an averment that "owing to the number of said transactions, it is impossible for the plaintiff to state with certainty how much the defendants now owe" but that a large amount is due to him upon a proper accounting, does not allege either in form or substance that the accounts are so complicated that they cannot be conveniently adjusted in an action at law.

In this Commonwealth a bill in equity cannot be maintained for discovery alone.

BILL IN EQUITY, filed November 6, 1905, against a firm of stockbrokers in Boston, alleging "that on or about September 20, 1904, and subsequently, the plaintiff entrusted to the defendants certain sums of money, amounting in all to $6,725.75, for the purpose of having the defendants purchase for him certain shares of stocks, bonds and other securities, the total value of which would at all times exceed the amount so paid by the plaintiff; that the defendants agreed to purchase such securities, charging the plaintiff therefor in each instance a brokerage commission, and also charging the plaintiff with interest upon the unpaid balances which they agreed to loan to the plaintiff on such purchases; that at the times said money was paid to the defendants, and during the whole course of the transactions referred to, the plaintiff relied upon the knowledge and experience of the defendants in regard to buying and selling stocks and other commodities which are commonly sold upon the stock exchange, and employed the defendants as his brokers in order to avail himself of said peculiar knowledge and experience.

"That the number of purchases and sales which the plaintiff requested the defendants to make on his account was very great; and the plaintiff has never received from the defendants a full, true and complete account of the same; that the plaintiff has received from the defendants from time to time statements of his account with them, but he is informed and believes, and therefore alleges, that some, if not all, of said statements are false and incorrect; that the defendants now claim that all of said sum of $6,725.75 has been lost as a result of the transactions executed by them for the plaintiff.

"That owing to the number of said transactions, it is impossible for the plaintiff to state with certainty how much the defendants now owe him, but he is informed and believes, and

therefore alleges, that a large amount of money is due him from the defendants upon a proper accounting."

The bill concluded with a prayer for discovery, for an accounting, and for other relief.

The defendants demurred to the bill for want of equity and because the plaintiff had a complete and adequate remedy at law.

The Superior Court made a decree sustaining the demurrer and ordering that the bill be dismissed. The plaintiff appealed.

*W. D. Turner,* (*G. Hogg* with him,) for the plaintiff.

*W. R. Sears,* (*A. Lincoln* with him,) for the defendants.

MORTON, J. In order to enable the plaintiff to maintain his bill it must appear from the allegations contained in it " that there was a fiduciary relation between the parties . . . or that the account is so complicated that it cannot be conveniently taken in an action at law." *Badger* v. *McNamara,* 123 Mass. 117. The relation between the defendants and the plaintiff disclosed by the bill is, it seems to us, the ordinary relation between a broker and his client or customer which, though it involves a certain amount of trust and confidence in the broker on the part of the customer, is not a fiduciary relation, but a relation as debtor and creditor. *Chase* v. *Boston,* 180 Mass. 458. The allegations that " the plaintiff relied upon the knowledge and experience of the defendants in regard to buying and selling stocks . . . and employed the defendants as his brokers in order to avail himself of said peculiar knowledge and experience" add nothing jurisdictional.

The averments that " the number of purchases and sales which the plaintiff requested the defendants to make on his account was very great " and that " owing to the number of said transactions, -it is impossible for the plaintiff to state with certainty how much the defendants now owe " but that a large amount is due him upon a proper accounting do not in form or substance allege that the accounts are so complicated that they cannot be conveniently adjusted in an action at law. In *Badger* v. *McNamara, ubi supra,* and *Ward* v. *Peck,* 114 Mass. 121, where the facts alleged resembled those in the bill before us, it was held that the plaintiff was not entitled to relief. In *Badger* v. *McNamara* the cases of *Bartlett* v. *Parks,* 1 Cush. 82, and *Hallett* v. *Cumston,* 110 Mass.

32, were distinguished on the ground that, in those cases, the accounts were to be settled on the same principles that they would be if the parties were partners.    The bill cannot be maintained for discovery alone if that is not incidental to any relief which the court has the right to grant.    Moreover as said by the court in *Wilson* v. *Webber*, 2 Gray, 558, 561, " The main purpose of these provisions of the practice act," referring to the provisions relating to interrogations, " was to substitute, in place of the tedious, expensive and complex process of a bill of discovery on the equity side of the court, an easy, cheap and simple mode of interrogating an adverse party, as incident to and part of the proceedings in the cause in which the discovery was sought," thus imparting, in theory at least, to the remedy at law almost if not quite the efficacy of a bill of discovery in equity.    See *Gunn* v. *New York, New Haven & Hartford Railroad*, 171 Mass. 417.

*Decree affirmed.*